Please all rise. Hear ye, hear ye, this Honorable Elector of the 2nd Judicial District is now open. The Honorable Christopher M. Kennedy presiding. Good morning, everyone. Please be seated. The first case in the top of the form is 2-25-0265. The people of the state of Illinois plaintiff's appellee, E. Dan J. Duddleston, defendant, appellate. Pardon me while we get the appellate, Ms. Maris Danak. Pardon me while we get the appellee, Ms. Julie Madison. Thanks. All right, Counsel. Ms. Danak, when you are ready, please feel free to adjust the microphone as well. Good morning, Your Honors. Good morning, Counsel. May it please the Court. My name is Amaris Danak from the Office of the State Appellate Defender, and I am here representing my client, Daniel Duddleston. Both issues in this case took place after the trial. First, Mr. Duddleston sought to advance his ineffective assistance claim for a full crankle hearing. That request was denied after a preliminary hearing. Second, Mr. Duddleston asked to be given 72 days of sentence credit for the 145 days of labor he provided in the kitchens of the McHenry County Jail. The Court denied that as well. Turning first to his ineffectiveness claim, the Court erred in failing to advance this claim for a full crankle hearing. He established possible neglect of the case due to a failure of his counsel to investigate or subpoena a witness who may have been driving the car. Alternatively, the trial court's inquiry was inadequate due to the judges having applied the wrong standard at the preliminary hearing. At a preliminary hearing, if the factual matters show even possible neglect, the judge should appoint new counsel to independently evaluate and present the defendant's claim. The claim should be dismissed at a preliminary hearing only if the defendant does not bring a colorable claim of ineffective assistance. Notably, a defendant does not need to prove ineffective assistance under Strickland at this stage. If that were the case, every ineffectiveness claim would just be disposed of at the preliminary hearing. Weren't there a couple of problems with this witness, though? I mean, for one, you're essentially going to be asking them to incriminate themselves in one way or another. Two, he didn't come up with this until a few days before trial, right? So, I mean, does that not, you know, reinforce the decision that it's not worth, you know, the strategic decision that it's not worth going in that direction? This was ultimately an I.D. case. Your Honor, not to mention, I think she had a horrific criminal history that she could have been, you know, to show that strategically the lawyer made this decision. Sure. To not put her on the scene. Sure. The problem with that is that that is an assumption that was made by the court and an assumption that was made by counsel. Certainly, there's no dispute that she may have pled the fifth had she been called to testify. She also, and it's not clear because there was no investigation, may have been, again, a human being with a conscience who, if under subpoena was called, may have admitted to this or may have incriminated the other person who was in the car. Additionally, the fact that she had this criminal record, we don't know what was going on with her other cases with the state. We don't know if she had some kind of plea deal or had worked something out with the state. The issue here is that there wasn't an investigation and counsel said it was very possible she was driving the car. And so once that determination was made by the attorney, whether that was early or late in the process, the first step to determine whether to subpoena this witness is to actually find out what she was going to say. And that really is the crux of his ineffectiveness claim, whether she should have subpoenaed this witness. Let's move on to the sentencing credit issue. Absolutely, Your Honor. With regard to the pre-trial programming credits, this is an issue of statutory interpretation. And we are asking that this court find the broad term any prisoner in 730 ILCS 5-3-6-3A4.2 includes prisoners in pre-trial detention as well as prisoners in IDOC. He gave the McHenry County Jail 145 days of labor. He was told that would count toward his sentence. What's 145 days of labor? What did he do? Your Honor, in this case, it's the – his attorney stated that he had worked in the kitchens and he had also completed some educational credits. They were not seeking credit for the educational programs because they had made the assessment that that did not fit under A4A, which is a separate section. But they were seeking credit for the 145 days of labor that he did. That's what you stated before. My question was, what did he do? If you don't know, that's okay. Your Honor, I don't know. This is my point. If you work for half an hour in the kitchen, do you get a half a day's credit on your sentence? Or is it contemplated a longer term of labor, if you will, to qualify for up to a half a day's credit? I believe that the administrative code may define that. I'm not sure. I would have to take a look at that. A4.2 does not specify how much labor has to take place in any given day. It simply says a day of labor, you know, is it an eight-hour day? See, that's my question. You're asking us to grant up to a day, half day credit, and yet we have no guidelines. If we were to remand this back, what do we tell the trial court to do? We would tell the trial court to exercise its discretion. Ultimately, this is discretionary credit to be given by the trial court. And to the extent that the trial court, you know, again, is concerned that there wasn't documentation or that there wasn't, you know, some kind of information, the trial court certainly could say, you know, I don't believe that this is sufficient for a half day of credit. All of this credit remains discretionary. What we're saying is that a pretrial prisoner is just as eligible for this credit as someone in IDFC, based on the plain language of the term prisoner. And so certainly if it was a half an hour of credit, something like that, the judge could say that's not sufficient. We're not granting you a half a day of credit for that labor. So what you're asking for is not 72 days of credit today. What you're asking for is it be remanded for the trial court to determine with what, if any, credit up to a half a day would be applicable. Well, we're asking for two things. If this court found it sufficient to grant him the 72 days, this court could do so. If it did not, we would be asking this court to remand it to the trial court to make that determination with To make the determination as to how many days. Correct. Correct. To make the determination as to how many days within the understanding that prisoner, that this applies to folks in pretrial detention. And so certainly if this court finds that that would be the more appropriate route to go, that would absolutely be something that we're requesting. But the statute doesn't say, doesn't delineate between prisoner and jailer or anything like that. No. The statute does not define prisoner. The statute does not define inmate. How do you distinguish the Williamson case? Your Honor, the Williamson case was incorrectly decided with all respect to that court, with due respect to that court. Williamson acknowledged that within the construct of the statute, inmate and prisoner are used interchangeably. And so the delineation is made through either a modifier or through the context that always makes it clear which set of prisoners they're referring to or which set of inmates. You can take a look at, if you look back at A4A, which is what Pupil v. Kelly determined, the first sentence pertained to the prisoners in IDOC because it refers to, you know, reentry programming, programming provided by the department. The second sentence refers to using the word inmates in pretrial detention. The very next following subsection, subsection B, refers to inmates who are in IDOC. And so it's very clear that throughout the statute the actual term, the actual term prisoner, the term inmate does not inherently in itself alone delineate between these two sets of people, either pretrial or in IDOC. Well, is that even what it turns on? Or is it, it turns on when the credit is earned, right? Someone could be in pretrial detention for years, right, and accumulate whatever credits. They might be termed a prisoner because by the time they're getting that credit they're committed to DOC, right? Absolutely. Absolutely. So, but 4.2 doesn't make that distinction, right? 4A is the first sentence, apparently DOC, second sentence, pretrial, right? Yes. How does it work with 4.2 then? Sure. 4.2 references A4A. 4.2 says that programming that's not basically applicable within A4A, it's sort of a catchall. It says any prisoner. And so in reference to A4A, again, when prisoner is not defined in the statute, when prisoner is used interchangeably to the inmate, it refers to the entirety of A4A because it says any prisoner. It says any prisoner, inmate, prisoner. You can take A4A, you know, you can swap the terms, inmate, prisoner. It still means the same thing. And so when you take a litigant at a statute, even if there were determined to be some ambiguity, that in pari materia canon statutory construction, these have to make sense together. And the courts that have decided that it only pertains to the first sentence have ignored the term any prisoner and ignored the term that subsection A4.2 is the only subsection in the entire statute that does not give some kind of additional modifier or some actual context to this. So is that ambiguous? No. Our position is that prisoner, based on the dictionary definitions and usage of prisoner, it's not ambiguous. The statute, you don't feel that the statute is ambiguous in that, you know, it's not clear, it doesn't clearly set out who is eligible and who is not? We kind of have to make that determination? To the extent that the statute does not define these terms, yes, it's ambiguous based on the interpretation. Again, reasonable minds have differed on this. The Williamson case, the other justices, when there's two different potential definitions, again, in the alternative, that's when you look to the tenets of statutory construction, and every applicable one as applied to this case supports the definition of prisoner, meaning both folks in pretrial detention and folks in IDFC. When this A4.2 was added in as a part of the Pretrial Fairness Act, it was designed essentially to encompass and act as a catch-all. Every time the legislature has amended the statute, it has added, it has not subtracted or taken away credits that are potentially available. In this particular case, counsel told the court that Mr. Duddleston had signed a contract, essentially with the jails, you know, saying that he would be given this credit. You know, there's a rule of lenity that suggests that, you know, when he's told this and provides, you know, this unpaid labor. Can the sheriff bind the trial court? No. No, it cannot. The same with the statewide minimus form. The statewide minimus form, there's a checkbox that allows, you know, the check says you're qualified under 4.2. Although that document was created, promulgated by the Conference of Chief Judges who said this is applicable, we're putting it on the form, that also technically does not bind the court's decision. However, to the extent that it is ambiguous, it does suggest an ambiguity if you have appellate court saying one thing with regard to whether this applies to pretrial prisoners and you have the Conference of Chief Judges thinking differently. And so... So in terms of 4.2 being a catch-all, that argument was presented to the court of the Woods Court in the Fourth District. Are you familiar with that? Yes, I am. So they found it's not a catch-all. What did they get wrong in your opinion? Your Honor, that case, I believe that what they got wrong is that they believed that 4.2 pertained only to the first sentence of A4A. They referred back to their determination in People v. Kelly, which is another unpublished decision in the Fourth District saying that, hey, if we treat this as a catch-all, then we've removed the differentiation that the court made in A4A between people in IDOC and people in pretrial detention. And again, with respect, respectfully to the Woods Court following Williamson in that regard, that was wrongly decided and we're asking this court not to follow those unpublished Fourth District decisions or Williamson. Thank you, Counsel. You will have time in rebuttal. Thank you, Your Honor. And then Ms. Angus, you may begin when ready. And also feel free, if necessary, to adjust the microphone. Let's see if I get that right. Good morning, Your Honors. Counsel, may it please the Court, my name is Julie Madison Angus and I represent the people of the State of Illinois in this matter. Your Honors, if I may, I'd just like to jump into that second issue right away and get into that discussion and we can move back to the Krankel issue if time permits. But the case for on this issue, Your Honors, is well settled. Under Williamson, it's well reasoned and it's consistent. Does that bind us? Does Williamson under the third bind us? No, Your Honor. You are certainly within your authority to make your own decision. But you're also governed by the same rules of statutory construction, those same canons. And I think when you apply those rules to Section A4.2A, you're going to reach that same conclusion that every other court that has considered this issue has reached. And that's that Section A4.2A of the Statute on Rules and Regulations for Sentencing Credit does not apply to pretrial detainees. Is that because of the word prisoner? The word prisoner, it is because of the word prisoner, Your Honor. The primary rule in statutory construction is that you need to determine the legislative intent. And to do that, you have to look at the context of the whole statute, all of 3-6-3 in this case. And when you do that, I know defendant's argument is that, well, prisoner is undefined. But it's not undefined if you look at the statute as a whole. I think you see that throughout the statute, when it wants the credit to apply to inmates in pretrial detention, it specifically says that in several cases in the preceding provision in A4A. It also says that in A4.1, which deals with educational degrees and getting credit. There it specifically talks about giving it to prisoners. And then I think the exact wording is to those held in pretrial detention prior to commitment to DOC. So it's clear the legislature knew how to provide these credits to inmates held in pretrial detention. And it didn't use that qualifying language in 4.2a. It's as simple as that. It also didn't exclude it. And here's the problem to my mind in 4.2a. It does say any prisoner. The word any could be the emphasis or it could be prisoner. But it refers everything back to Paragraph 4. Paragraph 4 includes Sentence 1, DOC, Sentence 2, pretrial. Doesn't that reference indicate that it applies pretrial and post-trial? Your Honor, respectfully, no. I think it actually enforces the people's position here, which is that if they wanted to make that distinction, which they did in Section 4a, they would have done the same in Section 4.2. And by just referring to prisoner, which they had referred to in Section 4a, they're essentially leaving out that credit that then would apply to inmates. And that also goes to another canon of statutory construction. I think if you interpret 4.2a as defendant would like, this Court is going to violate the essential canon that you can't make a provision within a statute meaningless or superfluous if you can avoid that interpretation. And that's exactly what would happen here if this Court were to say that prisoner in 4.2a included prisoners and inmates in pretrial detention. Well, then there's no reason for that distinction in 4a, and that provision becomes meaningless. Well, how about what was added in 363a.1.5, where it says credit may be awarded, it basically says in DOC or while in custody prior. Well, again, Your Honor, Section 3-6-3 is, in full context, is rules and regulations administered by the Department of Corrections. It is a Department of Corrections statute. And so they've gone about adding these changes in to specifically denote when they want those sentencing credits to apply. Because in general, if you're in the Department of Corrections, you're a prisoner in the Department of Corrections. You're not an inmate in the county jail. So they've taken the time where they want for those sentencing credits to apply to insert that language. And it's been very intentional. They obviously know how to apply those credits to inmates in pretrial detention in county jail, and they just haven't done it in 4.2a. I think this is a legislative issue that needs to be addressed in Springfield. Unfortunately, not by this Court. So it's ambiguous. The people will contend it's not ambiguous when you look at the whole context of the statute. The term prisoner used in 4.2a is not ambiguous. It fits. Do you have any other questions on that issue? Counsel, what was the purpose of the Pretrial Fairness Act's addition of 4.2a? What problem did that seek to solve? I think what they were seeking to solve, the legislature, if I can jump into their minds, so to speak. Yeah, right, right. They were trying to broaden the umbrella for sentencing credits to prisoners. And realizing that 4.2a might have been a little too limiting. There might be some other things, work, for example, that they're doing within DOC that they should be allowed to get half-a-day credit for rather than a full-day credit that was offered in 4.2a. So that was what they were envisioning there is let's open this up and give those prisoners in the Department of Corrections a little more sentencing credit. But only once they are committed to the Department.  So what would the purpose be of excluding pretrial credit for these programs? There are cases in which someone is kept in county jail for say four or five years awaiting trial and then they get a DOC sentence and they spend 30 days in the Department of Corrections and they're released. Your Honor, that's a great question. I don't know what the purpose of that would have been, but we have what the legislature has written and the plain language of that is that those credits don't apply to pretrial detainees. If in hindsight, and now the Williamson case has been decided a couple of years ago, so at this point if the legislature sees fit that that's the interpretation and that they need to correct course, they are certainly more than capable of adding that. But in this case under 4.2a, that qualifier language is not included. And it has been in all other cases where they think the sentence... Did we read anything into subsequent actions by the legislature to introduce legislation to change? I think you could read into it that they haven't, in this case, introduced legislation for change. Oh, they have. Okay. So then that would be in section 4.2a. Okay. Then that would indicate that our interpretation, the Williamson interpretation, and those courts that followed the unpublished decisions in the fourth, interpreted the statute correctly based on the language and the context of the whole. At the time. At the time. And now the legislature is kind of seeing that window open.  Seeing that window open. So the other point to make about the Woods, Jackson, and Simpson unpublished decisions, along with Williamson, is that there were petitions for relief to appeal granted. Petitions for relief to appeal filed in all of those cases, and they were denied by the Supreme Court. So that would suggest that the interpretation was solid, that it fit within the rules of statutory construction, and they saw no reason to disturb those. Well, I'm not sure we would agree with that. They decided not to decide that as well. Which they do often. One question about 4.2a. What does the phrase, not otherwise eligible, mean? Not otherwise eligible activities. Not otherwise eligible activities under 4.a is what it's referring to. Right, under paragraph 4. Well, for example, those work-related credits are not really discussed or provided for in section 4.a. So that would be not otherwise eligible. And some of those programs have specific limits, how many hours you have to complete, those types of things. And it may be opening the window for if you've completed other programs that haven't fully done the full 60 hours or completed it under the administrative codes requirements for completion, that they would still be eligible for some credit under that. Right, and the court would determine the amount. Correct. Correct, the court would determine the amount.  Correct. So you do agree it is a completely discretionary call on the trial court's part? It is a discretionary call on the trial court's part, but it is the trial court's responsibility to make that determination and not punt that, so to speak, to the Department of Corrections. I think we've seen that. The Krinkle issue, before I let you go, why shouldn't the trial court have at least appointed an independent counsel to investigate how Heather Kelly might have testified? I mean, there's no investigation whatsoever. Well, Your Honor, because at the preliminary Krinkle inquiry point, it's determining whether to appoint counsel lies in whether that claim lacks merit, is a matter of trial strategy, and if so, then counsel isn't required. And here, that's exactly what this was. The claim of ineffective assistance of the counsel for, and let's be clear, at trial, it was not for failing to investigate. It was for failing to call Kelly as a witness. And several times in defendant's discussion with the court, he said, well, she was the owner. He actually said driver and then corrected himself and said, no, no, the owner. And the court said, okay, so you want her because she was the owner, not the driver. And he said yes. What would that have done for him if she had been called and said, yeah, I'm the owner of the vehicle? We already knew that. The officer already testified to that. That provides him absolutely no relief at all. And even if we jump to the conclusion or the argument the defendant's making on appeal that she should have investigated, she knew about Kelly. She testified or she discussed that with the court. She said defendant and I talked about calling her, and we decided not to because I really wasn't sure if she was going to help him or hurt him. If she got on the stand, as the justices have recognized, she could have said he was the driver. Well, that certainly would have helped the defendant. Or most likely, she would have taken the fifth. And we know that if you know a witness is going to take the fifth, you can't call them. So there was absolutely nothing here in the record to show that counsel was unreasonable or that this was some trial strategy that was just pulled out of thin air. She thought about it. She talked about it with the defendant. They decided not to call her. It clearly was not against manifest error for the trial court to find that this claim lacked merit. So your position is without investigation, it can still be trial strategy? Without investigation under these facts, Your Honor, because she knew Kelly. Now, certainly there's situations where she knew of her. She did not know what she was going to say. Right. Correction, Your Honor. She knew of her. She also knew that there were criminal charges pending against her that related to the facts in this case. So it's very likely that she would have taken the fifth. There would have been nothing that she could have provided. And even if she did say, well, the defendant was the passenger and I was the driver, again, highly unlikely, but let's say she did say that, her testimony is not exonerating. It still would have been up against the officer's testimony, and he said, I'm 100 percent certain it was the defendant driving. And the whole theory of the defendant's case here was to try to chip away at the credibility of the officer and say it was dark, it was rainy, he was 300 feet away, there's no way he could know for sure. And so her testimony isn't really going to further that theory in any significant way. And under Roddus and Jackson that followed, it is clear that the trial court can consider both the facts and the legal merit. And I don't know how you do that without considering the Strickland problems, that test. So with that, Your Honors, I see I am almost out of time. Are there no further questions? Thank you. Thank you very much, Counsel. Thank you. The people would ask that this Court affirm the trial court's judgment in all respects. All right, Ms. Danek, you may proceed when ready. Thank you, Your Honors. I guess I'd like to start first with the argument regarding the legislation that has been put forth at this point by the legislature. I realize that was not in our original briefing, and it's something I would absolutely offer supplemental briefing on if this Court wished. I think that it's important to note the timing of the decisions that came down from the appellate court as well as the pending legislation. People v. Woods and People v. Jackson had petitions for leave to appeal denied on September 24th of 2025. All of these decisions have come out within the last three years or so, but these two, the Illinois Supreme Court declined to take them up on appeal. Less than five months later on February 4th, the bill was introduced to the Senate to ensure that pretrial detainees would be granted a programming credit under 4.2, A4.2. Less than seven months, it passed the Senate. In less than nine months, it's now advanced out of the House Judiciary Committee and been placed on a calendar for third reading short debate. It was Senator Laura Ellman out of Naperville who was the original sponsor of this bill. And when we are attempting to guess at what is in the minds of the legislators, I think it's important to recognize that some of the legislators are actually describing what their point was. And in an interview to NPR, Laura Ellman said, This bill is an attempt to clarify existing access to sentencing credit for programs being completed in the county jails. Ellman said the legislature responds to the appellate court decisions that have created confusion about when programming done in county jails qualifies for sentencing credit. Quote, we believe the amendments are in line with the original intent of the law to treat programming credit roughly the same whether it's completed in IDOC or in a county jail. And so again, to the extent that we're looking at what are they trying to do, they're trying to essentially take a look at Williamson and saying, We're rejecting that. This is not in line with what we tried to do. We have to fix this now because court after court after court, mainly in the 4th District, are denying folks hundreds of hours of credit for labor, education, and things like that, that we actually want to be encouraging people to do, to take part of that if they're stuck in county jail for four or five years, so that it sort of works hand in hand with the programming in IDOC. In fact, the Illinois Supreme Court has held in a different situation that where a legislature fails to amend a statute after the Supreme Court or an appellate court has interpreted it, that can be considered some degree of persuasive authority, although weak, that maybe the decision was correctly interpreted. So if the legislature does nothing, then the appellate court decisions, the Supreme Court decisions remain in place. The legislature did not see fit to need to change that at all. And so you'd ask, what does it say about the court's interpretation when a correction's been introduced and passed in the Senate less than seven months after their refusal to grant leave to appeal on this issue? I think that it says that the legislature feels it's important to correct the decisions from the appellate court, that they have not been correct in their interpretation, and that the will of the legislature isn't being done in the case of this statute. Counsel, where is your client right now? Right now he's in the Department of Corrections. Is there a release date? I don't have that on me. There is a term of MSR that would be to follow?  I see that I'm almost out of time. If you'd like me to address the other issue, I'd be happy to. Go ahead, you have 43 seconds. All right, all right. I think that the important part here is that, again, talking about the credibility of the officer, that her testimony wouldn't have mattered. Again, he did testify, he was 100% sure, but again, it was dark, it was raining, he was across the street. The entire purpose of the defense was to call into question his testimony, especially since he said, hey, I've got to go back and find a surveillance tape to see who was driving. And so if they had had the opportunity to bring in a witness who said, hey, I was driving, then that becomes a credibility contest, and that actually adds to the strategy that the defense employed during the trial. You can finish that, though. Sure, sure. And so in that case, the assumption that she would just plead the fifth and she would be a useless witness is just not a part of the trial strategy when that witness was never contacted and she didn't actually ascertain what that witness would say. Anything further? No, sir. All right, thank you very much, counsel. I want to thank the attorneys for their presentation. We will take the matter under advisement and issue a ruling in due course. We will recess until our next argument at 1030. All rise.